(Not for Publication or Citation)

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 04-258-DLB**

**JOSEPH EUTON**                                                                                      **PLAINTIFF**

**VS.**                           **MEMORANDUM OPINION & ORDER**

**CITY OF DAYTON, ET AL.**                                                                    **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \*

This case presents an action brought under 42 U.S.C. § 1983 for alleged wrongful termination.  On December 1, 2008, the matter was called for status conference and oral argument on Defendants' construed Motion to Dismiss (*see* Doc. # 15).  Having reviewed the case record, and having heard from counsel, the Court, for the reasons set forth below, finds Defendants' motion to be well-taken and dismissal of this action appropriate.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff Joseph Euton was let go from the Dayton, Kentucky police force on November 1, 2004, pursuant to the decision of Mayor Kenneth Rankle.  At the time of his termination, Euton had been employed with the Department for about two and one-half years.

While on duty on September 10, 2004, Euton developed probable cause to procure a search warrant for suspected drug activity.  He obtained the warrant and assembled a team to execute it.  It is undisputed that Euton had a civilian, Christopher Ward, ride along with him while these events were unfolding.  The ride-along had been approved by Euton's

immediate supervisor, Sergeant Raleigh Barnett.[1]  When Euton executed the warrant, the civilian was permitted to exit the cruiser, don a bullet-proof vest, and told to stand outside by an exit door to the building.  In addition, once the officers entered the premises, the civilian was permitted inside and handled some of the evidence.

At the time of these events, Euton was classified as a probationary sergeant.  On October 12, 2004, Euton was told by then Police Chief Mark Brown that he had failed his sergeant's probation because of his conduct surrounding the ride along and his failure to exercise good judgment in connection therewith.  On October 11, 2004, the day prior, Chief Brown had written to Mayor Rankle reporting on the events and his conclusion that Euton had failed his probationary status due to his failure to follow Department policies and procedures governing criminal investigations and due to his lack of judgment, thereby exposing citizens to possible injury, potentially jeopardizing the integrity of the investigation, and subjecting the Department to potential liability.  Chief Brown requested Mayor Rankle conduct a hearing on the matter "so that the proper authority and process may determine the extent of the failure outlined above."

On October 28, 2004, Mayor Rankle conducted the administrative hearing.  This hearing was held pursuant to K.R.S. § 15.520, which statute provides for an administrative process when complaints are made against police officers.  Euton was given notice of the hearing and his right to participate, and he chose to attend but without counsel.  Various witnesses testified, including Chief Brown, the civilian who rode along with Plaintiff, and the officer who accompanied Euton for the search warrant execution that night, Officer James

---

[1]The civilian was apparently a candidate for a part-time officer's position with the City.  He was also a graduate of the Ohio Police Academy, although not a certified officer.

Baldwin. Mayor Rankle rendered his Findings, Conclusions, and Disposition on November 1, 2004, concluding Euton violated Departmental policy and procedure. Further, he concluded appropriate disposition of the matter required Euton's employment be terminated, given his demonstrated lack of judgment in the field followed by his refusal to take responsibility for his actions, instead blaming the situation on what Euton viewed as Chief Brown advancing charges against him in retaliation for disagreeing with the Chief.[2]

Under K.R.S. § 15.520(2), Euton had a statutory right to appeal the Mayor's decision by filing an action in state circuit court. He did so on November 30, 2004, when he filed a written appeal with the Campbell Circuit Court. In it, he alleged the City of Dayton, in conducting the hearing, failed to comply with the administrative due process provided by K.R.S. § 15.520(1)(h), failed to provide advance notice his employment was in jeopardy rather than just his promotion, and failed to afford him an impartial tribunal because the Mayor was biased and made it known in advance that he intended to terminate him.[3] K.R.S. § 15.520(2) provides that the matter can be tried as an original action by the circuit court. However, the parties agreed to submit the matter to that court via briefing.

While this federal action was pending, the Campbell Circuit Court issued its Order of August 26, 2005, affirming the Mayor's decision. It found that there was substantial

---

[2]Euton asserts that at the time of the ride along, there were no written policies or procedural guidelines in place regarding the ride along and search warrant executions. He asserts he voiced his concerns over this lack of defined guidelines to his superiors both verbally and in writing. It is undisputed that in August of 2004 Chief Brown and Sgt. Barnett had Department employees turn in their policy and procedure handbooks for updating and that they were not redistributed until late October of 2004, although Defendants point out that turning in the handbooks does not amount to functioning without policies and procedures.

[3]While Euton asserts he was unaware he might lose his employment as a consequence of the complained of misconduct, he also asserts that Mayor Rankle made it known prior to the hearing that he intended to terminate Euton's employment.

evidence to support the Mayor's factual findings and that Euton's due process rights had not been violated.

Euton then appealed the Campbell Circuit Court's Order to the Kentucky Court of Appeals pursuant to K.R.S. § 15.520(3). There, he argued the circuit court erred on several fronts. He argued that court had failed to allow him to offer additional witnesses and evidence as is permissible under K.R.S. § 15.520(2); however, the court of appeals noted the parties agreed and informed the circuit court that the case could be resolved solely through the filing of briefs and also that Euton had not explained what the additional evidence would have been that he sought to offer. He argued the circuit court erred in affirming the mayor's decision because he was not aware that his employment could be terminated; however, the court of appeals noted that K.R.S. § 15.520 calls for notice of only the hearing, not its possible outcomes. Finally, he argued the circuit court erred in affirming the mayor's conclusion that he violated Department policy because there was no manual in place at the time; however, the court of appeals noted this finding was adequately based upon the hearing testimony of Officer Baldwin, Euton's fellow officer on the search warrant, that the Department policies in the manual were still in effect, despite the fact that the manuals had been collected for updating. The Kentucky Court of Appeals' December 15, 2006, decision upheld the circuit court's affirmance of the Mayor's disposition. Euton pursued no further avenues at the state court level following this decision.

While the matter was pending before the Campbell Circuit Court, Euton filed the instant lawsuit to challenge his termination with this Court. His Complaint in this federal action advances what are labeled as five counts. He alleges his substantive due process rights were violated by Defendants' arbitrary and malicious abuse of power (Count I); that

his demotion was converted to a termination in retaliation for exercising his First Amendment rights by speaking out about the management of the Department and his concerns about the lack of a policy manual (Count II); that he was terminated without due process in violation of his police officer's bill of rights (Count III);[4] that converting his demotion to termination was in retaliation for his exercising his right to a hearing and to substantive due process (Count IV); and claiming various damages (Count V). As Count V is simply a demand for damages, and Count IV a restatement of his other claims, the Court will focus upon what are Plaintiff's primary claims in this suit – procedural and substantive due process and First Amendment retaliation.

## DISCUSSION

To survive a Rule 12 motion, Plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must be construed "in the light most favorably to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008). Ordinarily, federal district courts may not consider matters outside the four corners of the complaint while reviewing Rule 12 motions, but courts may take judicial notice of matters of public record without converting the motion to dismiss into a summary judgment motion. *See Winget v. JP Morgan Chase Bank, N.A.,* 537 F.3d 565, 576 (6th Cir. 2008). Here, although the parties rely on documents outside the four corners of Euton's Complaint, all documents relied on are matters of public record or Civil Rule 6(c)(2)

---

[4] The legal theory for this Count is not clear. The allegation he was denied due process in violation of his bill of rights suggests he is alleging a *procedural* due process violation, but the next paragraph (37) repeats Count I's assertion of a substantive due process denial by an arbitrary and malicious abuse of power.

affidavits, which are appropriate for the Court's consideration in addressing whether dismissal is warranted.

**A.      Res Judicata**

Defendants argue Plaintiff is barred from pursuing his procedural due process claim because he opted to present it to the state court, rather than preserve his right to present it here pursuant to *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411 (1964). They point out that this is so and can be discerned because of Plaintiff's actions before the state court; namely, that Euton did not just argue to the circuit court that the mayor's decision was not supported by substantial evidence, but also challenged the hearing procedure itself. This, say Defendants, exceeded that court's function and was a voluntary submission by Plaintiff of his procedural due process claims to state court review, further evidenced by his prayer in that court for back pay, reinstatement and compensatory damages not ordinarily available under a K.R.S. § 15.520(2) appeal.

Plaintiff maintains he limited the matters before the circuit court to only those dealing with state law, namely K.R.S. § 15.520, and referred to "due process" in that sense as employed within that statute, rather than in the federal constitutional sense of due process as bestowed pursuant to the Fourteenth Amendment. The filings unfortunately do not clearly define what Plaintiff intended to assert where. Adding to this confusion is the state circuit court and appellate court's references to the Sixth Circuit's decision of *Buckner v. City of Highland Park,* 901 F.2d 491 (6th Cir. 1990), a decision grounded in concepts of federal constitutional procedural due process guarantees.

Under *England*, if a plaintiff voluntarily submits the federal constitutional question to the state court, he may be precluded from relitigating the question before the federal court.

*England,* 375 U.S. at 421-22.  To be sure, there are several federal circuit courts that have barred federal litigation upon concluding a plaintiff opted to present federal constitutional questions to the state court and had those questions decided adversely to plaintiff, even summarily so.  *See, e.g., First Am. Bank & Trust Co. v. Ellwein,* 520 F.2d 1309, 1311-12 (8th Cir. 1975); *Lecci v. Cahn,* 493 F.2d 826 (2d Cir. 1974); *Fisher v. Civil Serv. Com'n,* 484 F.2d 1099, 1100-01 (10th Cir. 1973).

In this Court's view, the more significant question than the appropriateness of applying *England* to Plaintiff's procedural due process claim specifically is the appropriateness of applying res judicata principles generally to all of Plaintiff's claims asserted here.  That is, when Plaintiff chose to pursue civil remedies over his termination via suit in the state court that culminated in a final decision, to what extent is he now presented from presenting claims arising from his alleged wrongful termination to this Court?  The answer is not a simple one.

"When deciding whether to afford preclusive effect to a state court judgment, the Full Faith and Credit Act, 28 U.S.C. § 1738, requires the federal court to give the prior adjudication the same preclusive effect it would have under the law of the state whose court issued the judgment." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).  This Court must therefore apply Kentucky law to determine if Plaintiff's claims are precluded.  The Kentucky Supreme Court has explained that the doctrine of *res judicata* is formed by two subparts: (1) claim preclusion and (2) issue preclusion:

> Claim preclusion bars a party from re-litigating a previously adjudicated cause of action and entirely bars a new lawsuit on the same cause of action.  Issue preclusion bars the parties from relitigating any issue actually litigated and finally decided in an earlier action.  The issues in the former and latter actions must be identical.  *The key inquiry in deciding whether the lawsuits*

*concern the same controversy is whether they both arise from the same transactional nucleus of facts. If the two suits concern the same controversy, then the previous suit is deemed to have adjudicated every matter which was **or could have been brought** in support of the cause of action.*

*Yeoman v. Kentucky Health Policy Board*, 983 S.W.2d 459, 464-65 (Ky. 1998) (citations omitted) (emphasis added).

Thus, under Kentucky law, "the general rule for determining the question of res judicata as between parties in actions embraces several conditions. First, there must be identity of the parties. Second, there must be identity of the two causes of action. Third, the action must be decided on the merits. In short, the rule of res judicata does not act as a bar if there are different issues or the questions of law presented are different." *Louisville v. Louisville Professional Firefighters Assn., Local Union No. 345*, 813 S.W.2d 804, 806 (Ky. 1991). Even so, res judicata does bar "entire claims that were brought or should have been brought in a prior action." *City of Covington v. Board of Trustees,* 903 S.W.2d 517, 521 (Ky. 1995). The Kentucky Supreme Court has explained:

> The rule is elementary that, when a matter is in litigation, parties are required to bring forward their whole case; and "the plea of res judicata applies not only to the points upon which the court was required by the parties to form an opinion and pronounce judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.

*Hays v. Sturgill*, 193 S.W.2d 648, 650 (Ky. 1946) (quoting *Combs v. Prestonburg Water Co.,* 84 S.W.2d 15, 18 (Ky. 1935)); *see also DLX, Inc. v. Kentucky,* 381 F.3d 511, 520 n.6 (6th Cir. 2004) (recognizing that Kentucky law forbids claim splitting). Therefore, under Kentucky law, when two suits concern the same controversy the "previous suit is deemed to have adjudicated every claim which was or *could have been brought* in support of the cause of action." *Yeoman v. Health Policy Board,* 983 S.W.2d 459, 465 (Ky. 1998)

-8-

(emphasis added). Two lawsuits concern the "same controversy" when "they both arise from the same transactional nucleus of facts." *Id.*

The actual application of this black letter standard has not been quite so straightforward. On the one hand, the Court could reasonably find that Kentucky law as described above prohibits Plaintiff from splitting his cause of action by further proceeding here. He received a decision on the merits in the state court proceeding, both his state court filings and cause of action here arise from the same transactional nucleus of facts, and there is substantial identity of the parties. *See Waddell v. Stevenson,* 683 S.W.2d 955, 958 (Ky. Ct. App. 1984) ("Privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right."). While Plaintiff may believe that the state court was not an appropriate forum to adjudicate his federal constitutional claims, he did not present an *England* reservation of his federal claims directly, and the Kentucky court could have adjudicated both his administrative appeal and a § 1983 action raising federal constitutional claims. *See Blair v. City of Winchester,* 743 S.W.2d 28, 31 (Ky. Ct. App. 1987). Thus, this Court could reasonably conclude Plaintiff's claims are barred by res judicata and should therefore be dismissed because they could have been raised in the Campbell Circuit Court and Plaintiff failed to do so. *See Bradley v. Fannin,* 390 F. Supp. 2d 625 (E.D. Ky. 2005).

On the other hand, there is undeniably confusion in the Sixth Circuit's application of res judicata provisions of Kentucky law, as was noted by the Circuit in *DLX, Inc. v. Kentucky,* 381 F.3d 511, 520 n.6 (6th Cir. 2004). This is precisely the dichotomy raised by the parties here. Defendants rely upon that Kentucky law that supports barring not just those claims actually asserted by Euton in state court, but also those which could have

been asserted, which position finds some support in *DLX*. Plaintiff relies upon *Stemler v. Florence,* 350 F.3d 578 (6th Cir. 2003) and decisions employing it to permit federal claims to advance as not being identical to the causes of action before the state court and the issues that were actually litigated and decided on the merits there. While the Circuit in *DLX* explained the flaw in *Stemler's* failure to account for Kentucky's view on claim-splitting, Plaintiff's legal position is understandable.

Thus, to some extent the Court might find persuasive, in Plaintiff's favor, this unclear status of Kentucky's rules on res judicata. However, to whatever extent it might, dismissal of Plaintiff's claims is still the appropriate course of action. This is because when each of the claims Plaintiff sought to assert here by his Complaint is examined, they fail to advance any viable legal theory of recovery against Defendants.

**B.     Procedural Due Process**

In his Complaint, Euton asserts that he was denied his procedural due process rights. To establish a procedural due process violation, a plaintiff must prove that he was deprived of a property or liberty interest by a party acting under color of state law without an appropriate hearing. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). But as the Supreme Court has explained:

> The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite.

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-70 (1972).

Here, Euton appears to be claiming a deprivation of a property interest in the form of an entitlement to continued employment. His Complaint, however, contains no such

allegation of a property right or entitlement in his continued employment. Rather, it was his supplemental response to Defendants' motion to dismiss that set forth this assertion, albeit in a conclusory, insufficient fashion. *See Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (noting that while a court must accept as true all of the allegations in a complaint, this requirement is inapplicable to legal conclusions).

"Property interests are not created by the Constitution, 'they are created and dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . " *Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985), *quoting*, *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Euton has provided no assertion of that upon which he bases his property interest or how he was anything other than an at-will employee of the City of Dayton. The statute upon which he was afforded a pretermination hearing, K.R.S. § 15.520, does not provide him a property interest or otherwise convert his at-will status. *Howard v. City of Independence,* 199 S.W.3d 741, 745 (Ky. Ct. App. 2006) (noting that while K.R.S. § 15.520 limits at-will discharge if grounds identified in the statute, i.e. complaint of misconduct, apply, "but for the requirements of the statute, the employment of police officers is terminable at will by the appointing authority for any cause or for no cause").

The City of Dayton, a city of the fourth class, may opt to adopt Kentucky's civil service provisions as provided in K.R.S. § 95.765; however, there is no indication or allegation here that it has done so. Otherwise, as *Howard* noted, K.R.S. § 83A.080(3) permits the mayor in those jurisdictions with a mayor-council form of governing to appoint and remove city employees "except as tenure and terms of employment are protected by statute, ordinance or contract[.]" Euton has not alleged the presence of any statute,

ordinance or contract that would otherwise change his at-will employment status. Moreover, while K.R.S. § 15.520 may provide for certain *procedures* to be followed in those instances where an officer is charged with official misconduct, it does not otherwise evidence that a substantive property interest in continued employment has been afforded the officer. No property interest exists in a procedure itself, without more. *Levin v. Childers,* 101 F.3d 44 (6th Cir. 1996) ("the creation of procedural rights does not ipso facto create any property interest"). Thus, Euton simply cannot present a federal constitutional claim that his procedural due process rights were violated.

Ultimately, however, even assuming that Euton had a constitutionally protected property interest in his employment that he was deprived of, he was afforded adequate procedural rights in this case. "Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Warren v. City of Athens,* 411 F.3d 697, 708 (6th Cir. 2005). In this case, Plaintiff was given notice of the charges against him, an explanation of the City's evidence, and an opportunity to present his side of the story at a full evidentiary hearing. *See Buckner v. City of Highland Park,* 901 F.2d 491, 494 (6th Cir. 1990). To the extent Euton is alleging that his pretermination proceeding was biased because the mayor presided, *see Duchesne v. Williams,* 849 F.2d 1004, 1007-08 (6th Cir. 1988), this assertion fails. He was afforded an adequate post-termination opportunity by the circuit court review process to present such a challenge, and this is all that is required for the due process to which he was entitled. *See Farhat v. Jopke,* 370 F.3d 580, 596 (6th Cir. 2004).

**C.     Substantive Due Process and First Amendment Retaliation**

"The doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed has come to be known as substantive due process." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir.1992). As the Sixth Circuit has explained, some of the many contexts in which the term substantive due process has been used are:

> 1. Application of one of the rights enumerated in the federal constitution, such as the First Amendment, to a state.
> 2. Application of a right unenumerated in the federal constitution to a state, such as the right to live together as a family.
> 3. An action of state or local government which "shocks the conscience" of the federal court, may violate substantive due process.
> 4. The right not to be subject to "arbitrary or capricious" action by a state either by legislative or administrative action is commonly referred to as a "substantive due process right."

*Id.* (footnotes omitted). The Sixth Circuit has also explained that:

> The Supreme Court has cautioned courts to carefully scrutinize so-called substantive due process claims brought under § 1983 "because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992). "It is important, therefore, to focus on the allegations in the complaint to determine how [the plaintiff] describes the constitutional right at stake and what the [governmental actor] allegedly did to deprive [the plaintiff] of that right." *Id.*

*Upsher v. Grosse Pointe Public School System*, 285 F.3d 448, 452 (6th Cir. 2002).

In his Complaint, Euton arguably advances two bases for a substantive due process claim – his termination itself, which he alleges was an arbitrary abuse of power, and the fundamental right not to be retaliated against for engaging in speech protected by the First Amendment. As to the former, there are two main Sixth Circuit cases addressing termination of employment and substantive due process, *Sutton v. Cleveland Board of*

*Education,* 958 F.2d 1339 (6th Cir. 1992) and *Perry v. McGinnis,* 209 F.3d 597 (6th Cir. 2000).

In *Sutton*, plaintiffs were "classified civil service employees," who were entitled to retain their positions during "good behavior and efficient service" based on an Ohio statute. *Sutton,* 958 F.2d at 1341. Plaintiffs argued that their termination violated their substantive due process right to employment. *Id.* at 1350. While the court determined that the plaintiffs' "state-created right to tenured employment" entitled them to *procedural* due process, the court concluded that they plaintiffs were not entitled to substantive due process protection. *Id.* Substantive due process "protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action." *Id.* The *Sutton* court looked with favor to its decision in *Charles v. Baesler*, 910 F.2d 1349 (6th Cir.1990), wherein it found that a public employee did not have a substantive due process right to promotion. *Id.*

> Most, if not all, state-created contract rights, while assuredly protected by procedural due process, are not protected by substantive due process. The substantive Due Process Clause is not concerned with the garden variety issues of common law contract. Its concerns are far narrower, but at the same time, far more important. Substantive due process "affords only those protections 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " It protects those interests, some yet to be enumerated, "implicit in the concept of ordered liberty," like personal choice in matters of marriage and the family.

*Id.* at 1350-51 (*quoting Baesler*, 910 F.2d at 1353). The *Sutton* court concluded that the "plaintiffs' statutory right to be discharged only for cause is not a fundamental interest protected by substantive due process," and that "[a]bsent the infringement of some 'fundamental' right, it would appear that the termination of public employment does not constitute a denial of substantive due process." *Id.* at 1351.

In the second case, *Perry v. McGinnis*, 209 F.3d 597 (6th Cir. 2000), the Sixth Circuit stated that "a substantive due process right may be implicated when a public employee is discharged for reasons that shock the conscience." *Id.* at 609. Relying on *Sutton*, the court noted that the violation of a fundamental right is necessary for a successful substantive due process claim. *Id.* at 609. Earlier in the opinion, the court held that the district court had incorrectly dismissed the plaintiff's First Amendment claim. *Id.* The court explained that because the plaintiff could make out a claim that he was terminated in violation of the First Amendment, his substantive due process claim should not have been dismissed either. The court stated that the plaintiff's right to freedom of expression should have been viewed as fundamental right in the substantive due process analysis. *Id.*

In this case, Euton's lack of established property interest in continued employment is certainly one detriment to his asserted procedural due process claim. *See, e.g., Gragg v. Somerset Technical College,* 373 F.3d 763, 769 & n.2 (6th Cir. 2004); *Bracken v. Collica,* 94 Fed. Appx. 265, 269 (6th Cir. 2004) ("[plaintiff's] at-will employment hardly seems the sort of fundamental interest protected by substantive due process"). And even if Euton could allege something other than at-will status, the Sixth Circuit, consistent with *Sutton* and *Perry,* has continued to find that an assertion of a generalized "substantive due process" claim in conjunction with the termination of a property interest in public employment is untenable. *Bracken v. Collica,* 94 Fed. Appx. at 268-69 (referencing *Sutton*, *Perry,* and *Charles v. Baesler,* 910 F.2d 1349 (6th Cir. 1990)). Substantive due process challenges do not survive where a provision of the Constitution addresses the allegedly illegal conduct at issue. *See Montgomery v. Carter County,* 226 F.3d 758, 769 (6th Cir.

2000). Thus, all substantive due process claims by Euton collapse into the decision on his First Amendment claim.

Euton maintains that his termination was in retaliation for his exercise of his right to free speech, as guaranteed by the First Amendment. To put forth a cognizable retaliation claim, Euton must allege that he "engaged in constitutionally protected speech," that he "was subjected to adverse action or was deprived of some benefit," and that "the protected speech was a substantial or a motivating factor in the adverse action." *Leary v. Daeschner,* 349 F.3d 888, 897 (6th Cir. 2003). Euton claims he was terminated because he voiced concerns regarding the management of the Dayton Police Department and the lack of a policy and procedures manual.

Under the first requirement, "engaging in constitutionally protected speech," a public employee must demonstrate that the speech touched on matters of "political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983). The Supreme Court has made it clear that "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.* at 147.

Here, Euton's allegation that his speech concerned the management of the Department (be they complaints about policy and procedure manuals or lack of responsiveness concerning a police memorial) must be accepted as true for purposes of the motion to dismiss. Even so, the Supreme Court's instruction in *Garcetti v. Ceballos,* 547 U.S. 410 (2006) teaches that these contentions are not speech by a public employee

protected by the First Amendment. *Garcetti* provides that the employee's speech is not protected if made in connection with "official duties," with the Court cautioning that it "ha[d] no occasion to articulate a comprehensive framework for defining the scope of an employee's duties." *Id.* at 424. Comparison with other decisions clarifies that comments, statements, and protests such as these by Euton are contextually inadequate to portray him as "speaking as a citizen." *See, e.g., Weisbarth v. Geauga Park District,* 499 F.3d 538, 543-45 (6th Cir. 2007) (employee's comments to consultant on morale and performance issues within official duties); *Haynes v. City of Circleville,* 474 F.3d 357, 364 (6th Cir. 2007) (employee's memo voicing concern that reduced training would endanger public by less effective police dogs made pursuant to official duties).

For his claim to survive, Euton's speech must address a matter of public concern. This occurs when it "involves issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *Brandenburg v. Hous. Auth. of Irvine,* 253 F.3d 891, 898 (6th Cir. 2001) (citation omitted). This is in contrast with internal personnel disputes or complaints about an employer's actions. *Id.* Again, comparison suggests the points offered by Euton were simply not a matter of public concern in the legal sense of First Amendment speech. *See, e.g., Farhat v. Jopke,* 370 F.3d 580 (6th Cir. 2004) (employee speech not on public concern since focus of employee's letters was personal beef with employer); *Rahn v. Drake Ctr., Inc.,* 31 F.3d 407 (6th Cir. 1994) (press release issued by nurse did not touch upon public concern because focus not on patient endangerment so much as employee dissatisfaction with work rules); *Brown v. City of Trenton,* 867 F.2d 318 (6th Cir. 1989) (officer's letter complaining about lack of support for SWAT team not public concern in that his interest as

an employee predominated).  Moreover, even were this speech to somehow constitute a matter of public concern, under the balancing test of *Pickering v. Board of Education,* 391 U.S. 563 (1968), Euton's interests do not outweigh the department's in promoting "the effective and efficient fulfillment of its responsibilities to the public." *Connick,* 461 U.S. at 150; *see also Water v. Churchill,* 511 U.S. 661 (1994) and *Williams v. Kentucky*, 24 F.3d 1526, 1536 (6th Cir.1994) (explaining that a court must "consider whether an employee's comments meaningfully interfere with the performance of [his] duties, undermine a legitimate goal or mission of the employer, create disharmony among co-workers, impair discipline by superiors, or destroy the relationship of loyalty and trust required of confidential employees." ).

Finally, if inability to satisfy all of the above requirements somehow leaves any doubt concerning Plaintiff's inability to advance a First Amendment retaliatory discharge claim, there is still the final requirement of causation.  Euton has failed to identify factually via his Complaint allegations how his allegedly protected speech was a substantial or motivating factor in the adverse decision of termination of his employment.  More important, even "[i]f retaliation for protected speech was a substantial or motivating factor in Defendants' disciplinary or adverse action . . . Defendants may present evidence that they would have taken [the] action in the absence of [his] protected speech." *Banks v. Wolfe County Bd. of Educ.*, 330 F.3d 888, 893 (6th Cir.2003).  Here, the state circuit and appellate courts have already held that Euton's behavior on the date in question amounted to misconduct violative of departmental policy and affirmed the mayor's termination of his employment based on same.  This finding evidences the adverse action of termination would have been

taken regardless of his speaking out on matters otherwise protected by the First Amendment.

## CONCLUSION

**IT IS ORDERED** that, for the reasons set forth hereinabove, Defendants' construed Motion to Dismiss (Doc. #14) is hereby **granted;** Plaintiff's claims are therefore hereby **dismissed with prejudice;** and this action is hereby **stricken** from the Court's docket.

This 30th day of September, 2009.

Signed By:
*David L. Bunning* DB
United States District Judge